IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IN RE: XACT TELESOLUTIONS, INC.:

───────────────────────────────

| | |
|---|---|
| UNITED STATES SMALL BUSINESS ADMINISTRATION | : |
| Appellant | : |
| v. | : Civil Action No. DKC 2005-1230 |
| XACT TELESOLUTIONS, INC., THE MESSAGE NETWORK, LLC XACT MESSAGE LLC | : |
| Appellees | : |
| | : |

**MEMORANDUM OPINION**

This case is before the court on appeal from the Order of Bankruptcy Judge Nancy V. Alquist approving the Debtors' reorganization plan. Two parties with interests in the matter have filed motions to dismiss the appeal as moot. Oral argument is deemed unnecessary because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. *See* Bankr. Rule 8012. For the reasons that follow, the court finds that the appeal is moot, and it will be dismissed.

**I. Background**

This appeal was brought by an unsecured creditor of the Debtors, who objects to a reorganization plan that allows the Debtors to sell substantially all of their assets to a company closely tied to one of the Debtors' board members, Howard Davidoff.

The following facts are undisputed except where noted.  XACT Telesolutions, Inc., XACT Message, LLC, and The Message Network, LLC (collectively, "Debtors"), are companies that provide customized teleservices, including telephone answering services and information help desk services, for universities, colleges, health care facilities, and other enterprises.  The Debtors do not own any tangible assets; their assets consist of accounts to provide service.  (Paper 1, Grossman test. at 175-76).  Sharon Grossman is the Debtors' president and a member of the Debtors' six-member Board of Directors ("Board").[1]  Davidoff also sits on the Board on behalf of CMNY Capital II, L.P., which has the right to designate one board member as a result of CMNY's investment in the Debtors' businesses.[2]  (Paper 1, Davidoff dep. at 16).  In addition, Davidoff is the Debtors' only known secured creditor.  (Paper 1, Disclosure Statement at 7).

On October 17, 2003, the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtors' attempts to reorganize suffered a significant setback when they lost their largest customer account in August 2004.  With the bankruptcy court's approval, the Debtors sought loans on four occasions to support their operating expenses; Davidoff

---

[1] It appears from the papers that the Debtors' three companies share a single Board of Directors.

[2] Howard Davidoff is one of four general partners in CMNY and one of two active partners.  (Paper 1, Davidoff dep. at 14).

participated in all four rounds of financing.[3]  (Paper 1, Davidoff dep. at 82).  Altogether, he contributed at least $600,000 in post-petition loans.

At some point soon after filing, the Debtors decided to sell certain assets from two wholly-owned subsidiaries in Florida that had not filed for bankruptcy ("Florida deal").  (Paper 1, Grossman test. at 158).  The sale involved notes that needed to be satisfied before the sale could be completed.  *Id.* at 156.  Several Board members, including Davidoff, formed an entity for the purpose of buying the notes.  The Florida deal was disclosed to the Board.  (Paper 1, Grossman test. at 161; paper 1, Davidoff dep. at 170).

Meanwhile, the Debtors retained a broker, Steven Michaels, to seek a buyer for the Debtors' assets, which Michaels appraised at $2.3 million.[4]  (Paper 1, Michaels test., at 91).  Michaels' work resulted in twenty-one inquiries and four offers.  *Id.* at 92, 93.  However, the Board voted to reject all four offers.[5]  The Board's

---

[3]  In the first round of financing, Davidoff personally participated along with other individuals, some of whom are on the Board.  (Paper 1, Davidoff dep. at 85-86).  In subsequent rounds, Davidoff was the only individual to provide the loan money.  (Paper 1, Davidoff dep. at 94-95).

[4]  The Debtors did not put their assets up for auction.  According to Michaels: "[I]n our industry you just don't auction off something like that.  It's --- due diligence.  They have to see what they are buying.  They are basically looking at a cash flow so it's not like going out and buying a cow or a car."  (Paper 1, Michaels test. at 92).

[5]  The papers do not give the exact date the Board considered and rejected the offers.

primary concern was that the offers did not provide any relief for the unsecured creditors. The Board also was concerned that three offers did not provide enough cash at closing to satisfy the fees needed to exit Chapter 11.[6] (Paper 1, Grossman test. at 144).

After the Board rejected the four offers, the Debtors did not have other buyers under consideration. (Paper 1, Grossman test. at 151). Subsequently, Davidoff made an offer valued at approximately $2.75 million.[7] (Paper 1, Grossman test. at 95). The Board considered the offer to be the highest and best offer, and one that would allow the Debtors to exit Chapter 11. *Id*. at 153-55.

There is some dispute over whether Davidoff voted on the Board's final decision to accept the Davidoff offer. The United States Small Business Administration ("Appellant") asserts that Davidoff participated in the vote.[8] (Paper 3, at 4-5). The Debtors and Davidoff deny that he participated, and explain that the decision involved two Board votes. (Paper 1, Grossman test. at 26). One vote was on the reorganization plan generally, and a second vote was on the Asset Purchase Agreement, which is the contract that transferred the assets to an entity Davidoff formed,

---

[6] Exit fees are comprised of some tax claims, legal fees, and administrative claims for services that were provided post-petition. The Debtors must satisfy the fees to exit Chapter 11. (Paper 1, Grossman test. at 145).

[7] The papers do not give the exact date of Davidoff's offer.

[8] Appellant is the statutory receiver for Sterling/Carl Marks Capital, Inc.

4

XACT Acquisition, LLC ("Buyer").[9]  (Paper 1, Grossman test. at 26).
The Debtors and the Buyer assert that Davidoff abstained from the
latter vote.  *Id*.  Grossman also testified that Davidoff did not
exert any pressure on the Board to accept his offer.  (Paper 1,
Grossman test. at 171).  She further testified that he has made no
promise of future employment to her if the sale is approved.  *Id*.
at 172.

On November 12, 2004, the Debtors filed their Second Amended
Joint Plan of Reorganization (the "Plan").  The Plan provides that
the Debtors sell substantially all of their assets to the Buyer.
Appellant filed the only objection to confirmation of the Plan.
Appellant argued that, because Davidoff is on the Debtors' Board
and the Plan would sell the Debtors' assets to an affiliate of
Davidoff, the sale is an improper insider deal that was not
proposed in good faith.

Appellant also objected on the ground that the Plan did not
enforce an Intercreditor Agreement, which is a pre-petition
agreement that provides for the priority, repayment and
subordination right among XACT Telesolutions and its lenders.
Appellant alleges that the Intercreditor Agreement forbids "credit
bidding" without the consent of other parties to the agreement.

---

[9] Davidoff formed XACT Acquisition LLC in December 2004 to
acquire the Debtors' assets.  XACT Acquisition is managed by
Davidoff.  In addition, Davidoff Investments, which Davidoff
manages, is the sole member of XACT Acquisition.

In an effort to enforce the agreement, Appellant has filed an adversary proceeding, which is pending.

In March 2005, the bankruptcy court held a two-day confirmation hearing on the Plan. The Debtors and Appellant presented exhibits and had the opportunity to call witnesses. The Debtors called two witnesses. Michaels testified about his efforts to secure offers and stated that, in his opinion, Davidoff's offer was more favorable than the four he had presented to the Board. (Paper 1, Michaels test. at 91). Grossman also testified at length. Davidoff was not present because his wife was recovering from surgery, (paper 1, confirmation hearing, at 5), although his deposition was submitted as an exhibit. Appellant did not call any witnesses.

The bankruptcy court confirmed the Plan in an order ("Confirmation Order") dated April 18, 2005. With respect to Appellant's argument that selling the Debtors' assets to the Buyer was not in good faith, the bankruptcy court stated:

> [T]he Court finds the testimony of Mr. Michaels and Ms. Grossman to be highly credible. Through their testimony and Exhibits, the Debtors demonstrated that they proceeded reasonably to market and attempt to sell the Debtors to third parties. They established that the Debtors made marketing efforts and received bids, but that none (except Davidoff's) were adequate to confirm a plan. Ms. Grossman's testimony established that the Debtors earnestly attempted to market the business, and genuinely believed that the Davidoff proposal incorporated by the Plan is fair, and is the highest and best available.

6

> Her testimony was convincing that the Davidoff
> bid was received only after outside marketing
> efforts had failed to yield a satisfactory
> offer, and that Mr. Davidoff did not
> participate in Board decisions with respect to
> his "inside" proposal, nor did he use
> influence to pressure the Board. (He abstained
> from the Board vote on this matter.) From the
> totality of circumstances surrounding the
> Plan, including the testimony of Mr. Michaels
> and Ms. Grossman, the Court finds that Debtors
> have proposed the Plan in good faith and have
> complied with § 1129(a)(3).[10]

(Paper 1, 5, ex. C, at 7). In a footnote, the bankruptcy court

noted that Davidoff did not testify. "It appears to the Court from

the evidence presented by Ms. Grossman, however that Davidoff

appears to have proceeded in good faith." (Paper 5, ex. C, at 5

n.8).

On April 26, 2005, Appellant filed a notice of appeal and an

emergency motion for a stay of the sale pending appeal. The

bankruptcy court entered a temporary stay pending presentation of

the issue to this court. On May 13, 2005, this court denied the

stay. *See U.S. Small Bus. Admin. v. XACT Telesolutions*, Inc., 05-

cv-1186-DKC (D.Md. 2005). On June 1, 2005, the Debtors and the

Buyer consummated the sale of the Debtors' assets. On June 2,

2005, all of the proceeds paid to the Creditors' Trust at closing

---

[10] Section 1129(a) states that the court shall confirm a plan
only if thirteen requirements are met. One of the requirements is
that "[t]he plan has been proposed in good faith and not by any
means forbidden by law." 11 U.S.C. § 1129(a)(3).

were disbursed to the allowed claimants, tax claimants, and the secured claimants. (Paper 7, Trustee's aff. at 2-3).

After Appellant filed its brief seeking a reversal of the bankruptcy court's order, the Buyer filed a motion to intervene "out of an abundance of caution" and filed a motion to dismiss the appeal as moot.[11]

## II. Standard of Review

The district court reviews the bankruptcy court's findings of fact for clear error and conclusions of law *de novo*. *In re Kielisch*, 258 F.3d 315, 319 (4th Cir. 2001). A finding of fact is clearly erroneous "only when the reviewing court 'is left with the definite and firm conviction that a mistake has been committed.'" *In re Broyles*, 55 F.3d 980, 983 (4th Cir. 1995) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). Thus, this court will not reverse the bankruptcy court's findings of fact "simply because it is convinced that it would have decided the case differently." *In re Broyles*, 55 F.3d at 983 (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985).

Appellant has argued that because the Plan calls for selling the assets to an insider or fiduciary of the corporation, the

---

[11] The Buyer states in its motion that "because it was not either the proponent of the Plan or the objector of the Plan, as a technical matter, the Intervenor is not an official party to the appeal." (Paper 9, at 4). Because the record in the bankruptcy court is not entirely clear with respect to the Buyer's status, the court will consider its motion to intervene. *See infra* p. 10.

bankruptcy court should have applied a heightened level of scrutiny to the transaction. (Paper 3, at 24). Presumably, Appellant wishes this court to apply heightened scrutiny as it considers the present motion to dismiss. The law is unsettled as to whether a bankruptcy court must apply heightened scrutiny to transactions that involve a fiduciary or insider. *See Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513 (7th Cir. 1991) (declining to give heightened scrutiny to a fiduciary's duty in a Chapter 11 proceeding); *Citcorp Venture Capital, Ltd. v. Comm. of Creditors Holding Unsecured Claims (In re Papercraft Corp.)*, 211 B.R. 813, 823 (W.D.Pa. 1997) ("[I]nsider transactions are subjected to rigorous scrutiny and when challenged, the burden is on the insider not only to prove the good faith of a transaction but also to show the inherent fairness from the viewpoints of the Corporation and those with interests therein."). *See also* C.R. Bowles, Jr. & Nancy B. Rapoport, *Has the DIP's Attorney Become the Ultimate Creditors' Lawyer in Bankruptcy Reorganization Cases?*, Am. Bankr. L.J. 55-56 (1997) (discussing a heightened standard used by some courts in reviewing transactions that involve fiduciary duties in Chapter 11 cases).[12]

---

[12] The authors assert that the two standards are a "corporate fiduciary standard," in which fiduciaries are protected by the "business judgment rule," and a "common-law trustee" standard, which is a more stringent standard. They assert that a majority of cases utilize the "corporate fiduciary standard" approach. C.R. Bowles, Jr. & Nancy B. Rapoport, *Has the DIP's Attorney Become the*
(continued...)

The court need not reach the question of whether a higher standard is required.  The Confirmation Order and the record demonstrate that the bankruptcy court closely scrutinized the transaction, thereby applying a heightened standard.  With respect to the appeal before this court, the question is moot because Appellant's good faith argument, discussed below, fails under both standards.

## III. Motion to Intervene

The Buyer has moved the court (1) to grant intervention of right under Fed.R.Civ.P. 24(a)(2), or, alternatively, (2) to permit intervention under Fed.R.Civ.P. 24(b)(2).[13]  None of the parties, including Appellant, have opposed the motion.

As a threshold matter, it is not entirely clear whether the Buyer is already a party.  In the bankruptcy court, the Buyer is listed as a party and was involved in the litigation through the filing of motions to that court, although there is no entry in the record that formally adds the Buyer as a party.  Presumably, the bankruptcy court allowed the Buyer to participate as a "party in

---

[12](...continued)
*Ultimate Creditors' Lawyer in Bankruptcy Reorganization Cases?*, Am. Bankr. L.J. at 55-56.

[13] Initially, Davidoff and Davidoff Investments sought to intervene along with the Buyer.  (Paper 4).  Subsequently, these parties filed an amended motion to intervene that eliminated Davidoff and Davidoff Investments.  Thus, the Buyer is the only parking seeking to intervene.  (Paper 9, at 1 n.1).

interest" pursuant to 11 U.S.C. § 1109.[14]  In its notice of appeal, Appellant lists Davidoff, Davidoff Investments, and the Buyer as parties to the appeal.

The court need not, however, decide whether the Buyer is formally a party and may therefore participate as a matter of right because the court may grant permissive intervention under Rule 24(b)(2).  It states in pertinent part:

> Upon timely application anyone may be permitted to intervene in an action: . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

The Buyer's claim and the present appeal have "questions of law or fact in common," namely, whether the bankruptcy court properly confirmed the Plan, which allowed the Buyer to purchase the Debtors' assets.  Moreover, there is no indication that the Buyer's intervention will delay or prejudice the adjudication of the rights of the original parties.  For these reasons, the Buyer's motion for leave to intervene pursuant to Rule 24(b)(2) is granted.

---

[14] 11 U.S.C. § 1109 provides that "A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter."

**IV.   Mootness**

The Buyer argues that this appeal should be dismissed for lack of jurisdiction both because (1) the appeal of the Confirmation Order is moot under 11 U.S.C. § 363(m) of the Bankruptcy Code; and (2) the appeal is equitably moot because the Plan has been substantially consummated.[15]

**A.   Statutory Mootness**

Section 363(m) of the Bankruptcy Code provides that:

> The reversal or modification on appeal of an authorization under section (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not the entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

Once a bankruptcy sale has been consummated, § 363(m) deprives courts of jurisdiction to review the sale except on the limited issue of whether the sale was made to a good faith purchaser. *See Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*, 105 F.3d 837, 839 (2nd Cir. 1997); *Harriman v. Goldman (In re Corneal)*, No. JFM-00-3536, 2001 WL 34388125, at *2,(D.Md. Oct. 1, 2001). *See also Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985) (analyzing whether the buyer was a good faith purchaser where a party claimed

---

[15] The Buyer filed the motion to dismiss as moot.  The Trustee for the Creditors' Trust has filed a joinder to the Buyer's motion to dismiss. (Paper 7). The Debtors have not filed a motion to dismiss or filed a joinder to the Buyer's motion to dismiss.

the appeal was moot pursuant to § 363(m)).  Section 363(m) "protects the reasonable expectations of good faith third-party purchasers by preventing the overturning of a completed sale, absent a stay, and it safeguards the finality of the bankruptcy sale." *In re Trism, Inc.*, 328 F.3d 1003, 1006 (8th Cir. 2003).  *See also In re Edwards*, 962 F.2d 641, 645 (7th Cir. 1992); *Licensing by Paolo*, 105 F.3d at 840; *Corneal*, 2001 WL 34388125, at *2.  Because Appellant challenges whether the Buyer is a good faith purchaser for purposes of § 363(m), the court will address this limited issue.

Although the Bankruptcy Code does not define "good faith purchaser," the Fourth Circuit has adopted the traditional equitable definition that other courts of appeal have adopted: "One who purchases the assets for value, in good faith, and without notice of adverse claims." *Willemain*, 764 F.2d at 1023 (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1197 (7th Cir. 1978)).

## 1. Good Faith

The Fourth Circuit has stated that "[t]ypically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *Id.* (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d at 1198).  The court has not addressed directly the question of whether selling assets to an insider or fiduciary

constitutes bad faith *per se*.  However, it has held that it is not *per se* bad faith for the debtor to sell its assets to a buyer who already has an ownership interest in the assets.  *See Willemain*, 764 F.2d at 1024.

Beyond the Fourth Circuit, the law is unsettled, although the majority of courts have held that a sale of assets to a fiduciary or insider is not bad faith *per* se.  *See*, *e.g., In re Andy Frain Servs., Inc.,* 798 F.2d 1113, 1125 (7th Cir. 1986) (stating that a sale to a fiduciary "without more would not suffice to show a lack of good faith"); *In re Bakalis*, 220 B.R. 525 (Bankr. E.D.N.Y. 1998) ("It is not '*per se* bad faith' for an insider to purchase assets of a debtor, and a sale to him without more would not suffice to show a lack of good faith."); *Citicorp Venture Capital, Ltd. v Comm. of Creditors Holding Unsecured Claims (In re Papercraft Corp.)*, 211 B.R. 813, 821 (W.D.Pa. 1997) ("[N]othing in the Bankruptcy Code proscribes insiders from purchasing claims against a debtor or requires insiders to conduct themselves in any particular way or make any particular disclosures when so doing."); *Penn Mutual Life Ins. Co. v. Woodscape Ltd. P'ship (In re Woodscape Ltd. P'ship)*, 134 B.R. 165 (Bankr. D.Md. 1991) ("There is no prohibition against a private sale or against a sale to insiders. . ." ); *In re Wilde Horse Enters., Inc.*, 136 B.R. 830, 842 (Bankr. C.D. Ca. 1991) ("It is not bad faith *per se* for an insider to purchase property from an estate, even where the insider has a fiduciary duty to the

estate."). *But see In re Allied Gaming Mgmt., Inc.*, 209 B.R. 201
(Bankr. W.D. La. 1997) ("As . . . a professional person employed by
the estate and, in addition a fiduciary, he is precluded from
purchasing property of the estate.").

Where courts have considered and evaluated such sales, they
typically have looked at several factors.  First, the courts have
considered whether the sale involved full disclosure to the court
and to the parties involved in the proceeding.  *See In re Med.
Software Solutions*, 286 B.R. 431, 446 (Bankr. D.Utah 2002)
(approving sale to an insider-buyer where the debtor disclosed all
elements of the transaction); *In re Silver Oak Homes, Ltd.,* 167
B.R. 389, 398 (Bankr. D.Md. 1994) (stating that the undisclosed
interest of two insiders of the debtor precluded the insiders from
purchasing property of the debtor's estate); *In re Wilde Horse
Enters.,* 136 B.R. at 842 (discussing the need for full disclosure).

Second, the courts have considered whether the debtor sought
other buyers and whether the insider-buyer paid an adequate price.
*See Paulman v. Gateway Venture Partners III, (In re Filtercorp)*,
163 F.3d 570, 577 (9th Cir. 1998) (finding that the insider-buyer
was a good faith purchaser where there was no sign of collusion,
the insider-buyers' bid was $450,000, and the assets were worth
between $400,000 and $600,000); *In re Abbotts Dairies of Pa., Inc.*,
788 F.2d 143, 149 (3rd Cir. 1986)(questioning the good faith of the
buyer in part because no appraisal was conducted); *In re Snyder*, 74

B.R. 872, 878 (Bankr. E.D.Pa. 1987) (denying a sale where the property's proposed purchase price was $73,000 and three witnesses testified that they were willing to pay an average price of $368,5000).

Third, courts have considered the nature of the relationship between the debtor and the insider-buyer. *See In re Allied Gaming Mgmt., Inc.*, 209 B.R. at 203 (denying sale of property to proposed buyer, who was the bankruptcy trustee and who formerly served as the debtor's accountant); *In re Snyder*, 74 B.R. at 874 (denying a sale to the debtor's brother).

Relying on *In re Allied Gaming Management,* Appellant urges the court to adopt an outright ban on a sale to an insider or fiduciary. (Paper 3, at 20). Because the majority of courts have held that an asset sale to a fiduciary or insider is not bad faith *per* se, this court declines the invitation.

As a factual matter, Appellant suggests that the buyer was not a good faith purchaser because he had multiple conflicts of interests. Those alleged conflicts include (1) Davidoff's position as a Director and Appellant's allegation that he participated in the vote to approve the sale; (2) Davidoff's participation (through CMNY) in the Intercreditor Agreement; (3) Davidoff's involvement in negotiating the Asset Purchase Agreement (Appellant suggests that because of Davidoff's position, Grossman failed to make a counter-offer or make material changes); (4) Davidoff's role as a post-

16

petition lender, which gives him the right to be repaid before other creditors; (5) Davidoff's ownership in CMNY, which owned equity interests in the Debtors; (6) Davidoff's prior role as a director of Sterling/Carl Marks Capital, Inc., during which he failed to ensure that Appellant was a secured creditor; and (7) Davidoff's participation in the "Florida deal." (Paper 3, at 4-12).

Appellant's arguments are unpersuasive.  First, despite Appellant's assertions, the record does not support his argument that Davidoff voted to approve the sale.  Grossman testified that there were two votes, and that Davidoff abstained from the vote involving the Asset Purchase Agreement.  (Paper 1, Grossman test. at 14).  Her testimony is supported by the Debtors' e-mails, which also show two votes addressing the two different matters. (Paper 1, Debtors' exs. 9, 10).

Second, with respect to the Florida deal, Appellant suggests that the Buyer showed bad faith because (1) Davidoff was among the Board members who participated in and profited from the deal; (2) the Debtors were required to seek the bankruptcy court's approval before selling the assets and failed to do so; and (3) the Debtors' Disclosure Statement failed to discuss the Florida deal.  The fact that Davidoff and others involved in the Florida deal made a profit does not, standing alone, show bad faith.  Appellant has failed to present evidence demonstrating bad faith, such as collusion. Moreover, even assuming the Debtors were required to get bankruptcy

17

court approval before the sale and the Disclosure Statement improperly omitted the Florida deal, any failures are the failures of the *Debtors* – not the *Buyer*.

Third, although Davidoff has taken on multiple roles, the evidence shows that there was full disclosure to the court and to the parties involved in the bankruptcy proceeding. The bankruptcy court was informed of Davidoff's participation in events post-petition, as were the Debtors' Board and the trustees and other creditors. (Paper 1, Disclosure Statement). Moreover, before selling their assets to the Buyer, the Debtors made an earnest attempt to find an outside buyer, and had valid reasons for rejecting the offers they received. Significantly, Davidoff did not make an offer until *after* the Board rejected the outside offers.[16] There is no evidence that Davidoff used his insider information to his benefit and to the detriment of the Debtors. This is supported by the fact that the Buyer bid $2.75 million, more than the asset appraisal of $2.3 million.

Finally, even though Davidoff participated in negotiating the Asset Purchase Agreement, there is no evidence of coercion, improper promises, or indications that he used his Board position or other connections to influence the Board's decisions. Thus, the court finds that the Buyer's offer is in good faith.

---

[16] Appellant has not come forward with evidence to suggest that there were other potential buyers or that the Debtors could have obtained a higher price.

## 2. For Value

Generally a buyer pays "value" if he or she pays at least seventy five percent of the appraised value of the asset. *See Willemain*, 764 F.2d at 1023. Because the Buyer paid $2.75 million and the assets were appraised at $2.3 million, there is no question that the Buyer paid value for the Debtors' assets.

## 3. Without Notice of Adverse Claims

The knowledge that Appellant has filed an appeal of the bankruptcy court's decision does not deprive the Buyer of good faith purchaser status. *See Willemain*, 764 F.2d at 1024.

Accordingly, the Buyer was a good faith purchaser. It is undisputed that Appellees did not obtain a stay of the Confirmation Order, and as a result the sale of the Debtors' property took place on June 1, 2005. Thus, § 363(m) deprives the court of jurisdiction to review Appellant's appeal.

## B. Equitable Mootness

The Fourth Circuit has explained that the doctrine of equitable mootness is "a pragmatic principle, grounded in the notion that, with passage of time after a judgment in equity and implementation of that judgment, effective relief on appeal becomes impracticable, imprudent, and therefore inequitable." *Mac Panel Co. v. Va. Panel Corp.*, 283 F.3d 622, 625 (4th Cir. 2002). In a bankruptcy proceeding, "equitable mootness is often invoked when it becomes impractical and imprudent 'to upset the plan of

reorganization at this late date.'" *Id.* (quoting *In re UNR Indus.*, Inc., 20 F.3d 766, 769 (7th Cir. 1994)).   Nevertheless, the Fourth Circuit has recognized that:

> Orders confirming plans of reorganization do not become immune from appellate review upon their partial, or even substantial implementation.  On the other hand, dismissal of the appeal on mootness grounds is required when implementation of the plan has created, extinguished or modified rights, particularly of persons not before the court, to such an extent that effective judicial relief is no longer practically available.

*Cent. States, Southeast and Southwest Areas Pension Fund v. Cent. Transp., Inc.*, 841 F.2d 92, 96 (4th Cir. 1988) (citations omitted). The Fourth Circuit has employed a "totality of circumstances" approach and identified four factors that are relevant to a finding of equitable mootness:

> (1) whether the appellant sought and obtained a stay; (2) whether the reorganization plan or other equitable relief ordered has been substantially consummated; (3) the extent to which the relief requested on appeal would affect the success of the reorganization plan or other equitable relief granted; and (4) the extent to which the relief requested on appeal would affect the interests of third parties.

*Mac Panel Co.*, 283 F.3d at 625.

In the present case, all four factors support a dismissal of this appeal as equitably moot.  First, as discussed previously, appellant did not obtain a stay.  Second, the reorganization plan has been substantially consummated.  Specifically, the Debtors' estates were consolidated and the Debtors' corporate entities were

dissolved; the Debtors and the Buyer consummated the sale of the Debtors' assets; the Debtors have assigned their contracts and leases to the Buyer; the Buyer is operating and managing the business that the Debtors previously owned; the Debtors' employees now work for the Buyer; the Buyer has paid to the Creditors' Trust the purchase price required per the Asset Purchase Agreement; and the Creditors' Trust has paid the Debtors' creditors. (Paper 5, at 7-9, and exs. E, F, G, H and I; paper 7, ex. A, at 2-3, Trustee's aff.). Third, the primary relief Appellant seeks in the form of a reversal of the Confirmation Order would completely undo the Plan because it is predicated on the sale of the Debtors' assets to the Buyer.

Fourth, the relief Appellant seeks would have a significant negative impact on third parties, such as the employees and the Debtors' creditors. *See Dev. Co. of Am. v. Adamson Co. (In re Adamson Co.)*, 159 F.3d 896, 898 (4th Cir. 1998) (noting that invalidating the sale "would adversely affect individuals who are not parties to this case, such as [the debtor's] former employees, bankruptcy creditors, and [the buyer's] current debtors and creditors"). With respect to the fourth factor, the Fourth Circuit has shown a great reluctance to grant relief that would significantly impact third parties. *See Mac Panel Co.*, 283 F.3d at 626 (stating that the relief the appellant sought "would require the court to undo current banking and trade arrangements entered

21

into by third parties in reliance on the success of the reorganization plan"); *Central States*, 841 F.2d at 96 ("The primary relief sought by the Pension Fund is a complete reversal of the plan of reorganization. That, of course, would require the undoing of financial transactions involving third parties, not participants in this litigation."); *Sales Serv. Corp. v. Nat'l Homeowners Sales Serv. Corp. (In re Nat'l Homeowners Sales Serv. Corp.)*, 554 F.2d 636, 637 (4th Cir. 1977) (finding that an appeal was moot where the property was sold to a good faith purchaser because substantial investment had been made upon reliance of good title to the property).

Citing *Central States*, Appellant asserts that its appeal should be dismissed as moot only if "the court cannot equitably provide *any* remedy." (Paper 10, at 11). Appellant argues that, even though the Plan has been substantially consummated, there are alternative remedies that would leave the Plan undisturbed. Appellant suggests three such remedies: allow a money judgment against the Buyer; impose a constructive trust against the Buyer; or impose an equitable lien against the Buyer.

The Trustee for the Creditors' Trust argues that these remedies can be granted against the Debtors only, and not against third parties such as the Buyer. (Paper 13, at 9). Appellant appears to concede this point by stating that "[t]he only remedies not available to the Receiver in this case are those which would

22

prejudice an innocent purchaser or an innocent third party." (Paper 15, at 8).  Because these are remedies against the Buyer and the Buyer was a good faith purchaser (and hence an innocent purchaser), the alternative remedies are not available.

Accordingly, under the totality of circumstances laid out in *Mac Panel*, the court will find that Appellant's appeal is equitably moot.

## V. Conclusion

Based on the foregoing reasons, Appellant's appeal is moot under 11 U.S.C. § 363(m) and the doctrine of equitable mootness, and the court will grant the Buyer's and the Trustee's motion to dismiss.  A separate Order will follow.


```
        /s/
```
DEBORAH K. CHASANOW
United States District Judge